Order Entered.

David L. Bissett
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| BRIAN JAMES McAULIFFE and ) | Case No.: 3:16-bk-00110 |
| SUZANNE M. WILLIAMS-McAULIFFE, ) | |
| ) | |
| Debtors. ) | Chapter 13 |
| ) | |
| ) | |
| SUZANNE M. WILLIAMS-McAULIFFE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | AP No.: 1:20-ap-0044 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| DEPARTMENT OF THE TREASURY, ) | |
| INTERNAL REVENUE SERVICE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Suzanne Williams-McAuliffe (the "Plaintiff") seeks damages against the Internal Revenue Service ("IRS") for alleged violations of the discharge order when it attempted to collect tax debts previously discharged in bankruptcy. The Plaintiff seeks costs of the action and damages related to the sale of her residence at a reduced value. She also seeks legal fees, despite counsel being her spouse.[1] The IRS argues that because it sent its collection attempts by automated delivery systems affected by the COVID-19 pandemic, there was no willful violation of the discharge order. Further, the IRS contends that the Plaintiff cannot recover fees for legal work performed by her spouse.

---

[1] Williams-McAuliffe's husband, Brian McAuliffe, was additionally a debtor in the bankruptcy case and a plaintiff in this adversary proceeding until the eve of this trial, at which point he filed a motion to dismiss himself as plaintiff. That motion was granted on April 8, 2022.

1

For the reasons stated herein, the court awards Plaintiff damages of $498.21 and will refund the $235 fee for reopening the Chapter 13 case.

## I.     BACKGROUND

The Plaintiff and her husband, Brian J. McAuliffe, were co-debtors in a Chapter 13 case they filed on February 19, 2016. Of some importance to this case, both debtors are licensed attorneys in the state of West Virginia, and although the Plaintiff in this action does not routinely practice bankruptcy, Mr. McAuliffe is a frequent litigant in this court and is well-versed in the intricacies of the Bankruptcy Code.[2] Accordingly, Mr. McAuliffe represented himself and the Plaintiff in their bankruptcy case. The IRS asserted a claim for $13,624.58 relating to tax years 2010 and 2011, of which $7,230.78 was secured. Before bankruptcy, the debtors paid the IRS pursuant to a 2012 installment agreement, but the debtors terminated the agreement in bankruptcy and instead paid the debts through their repayment plan. The court confirmed the plan on November 16, 2016, and the debtors received a discharge on September 24, 2019.[3] During the case, however, the debtors accrued a new liability for the 2018 tax year.[4]

Several months after the discharge and prior to effects of the COVID-19 pandemic reaching the United States, the IRS sent the debtors two demand letters—dated February 5, 2020 and March 4, 2020—seeking to collect the liabilities from the 2010 and 2011 tax years. Mr. McAuliffe, on the couple's behalf, sent a letter to the IRS's Cincinnati Service Center in March 2020 contesting the collection and advising the IRS of the discharge. On August 15, 2020, the debtors received another demand letter and filed a motion to reopen the bankruptcy case shortly thereafter. Despite this third demand letter, the IRS did not acknowledge Mr. McAuliffe's March 2020 letter until September 29, at which point it communicated it would need sixty days to review the liability.[5] Contrary to this communication, the IRS had already abated the 2010 and 2011 taxes the previous day. The IRS attributes the seven-month delay and miscommunications to a combination of the COVID-19

---

[2] Mr. McAuliffe was one of the ten highest-volume filers in this district in 2017, 2018, and 2020.

[3] As an unsecured creditor, the IRS received 22% distribution on the $6,393.80 unsecured portion of the claim.

[4] The debtors do not contest the 2018 liability and state in their pleadings that they intended to enter into an installment agreement in that regard, but to an extent were prevented from doing so due to the lingering 2010 and 2011 debts. Mr. McAuliffe contacted the agency in attempts to enter into an installment agreement regarding the 2018 debts as early as January 2020.

[5] The IRS in its pleadings repeatedly emphasizes that correspondence was sent to Cincinnati, rather than the IRS offices in Richmond, Virginia and Philadelphia, Pennsylvania which were listed in the proof of claim.

pandemic and Mr. McAuliffe's mailing of communications to the wrong IRS office. Further, the IRS blames the effects of COVID-19 for the "delay before the IRS applied the discharge order to the federal tax accounts" of the Plaintiff, which presumably led to the automated notices.

The court reopened the debtors' bankruptcy case on December 1, 2020, and the debtors filed this adversary proceeding three days later.[6] While the IRS granted no relief through administrative remedies, it sent another letter to the debtors dated August 9, 2021, stating an intent to terminate their installment agreement and that $1,150 was due immediately to avoid default.[7] In addition, the notice stated the IRS "may levy (seize) your state income tax refund or other property or rights to property and apply the proceeds to the total amount of your unpaid liability." Around the same time, the debtors received separate communications from the IRS accepting the installment plan regarding the 2018 debts, nearly twenty months after Mr. McAuliffe's initial request.[8] It is the Plaintiff's contention that entrance into the 2018 debt installment plan was inhibited by the IRS's mistaken belief that the 2010 and 2011 debts were still owed.[9]

Mr. McAuliffe continued to represent the Plaintiff, despite filing a motion to remove himself as a plaintiff in the action on the eve of the trial. The Plaintiff testified at trial that at no point had the couple established a fee agreement or contract for the legal services, nor had she made any payments to her husband for the representation. Nevertheless, she seeks to recover legal fees for pursuing the action. Beyond legal costs, the Plaintiff claims that the couple intended to sell their Martinsburg residence and while it was initially listed for $295,000, the couple took the first offer they received as a result of the August notice of intent to levy. The accepted offer was

---

[6] The case was stayed on February 5, 2021 for the debtors to properly exhaust administrative proceedings in contesting the liability prior to pursuing this action, as is required by 26 U.S.C. § 7433(d)(1). The IRS failed to reach any decision within six months of the debtors filing for administrative relief.

[7] While the IRS takes issue with McAuliffe directing his communications to the Cincinnati office rather than the offices listed on the claim, this letter came from the Cincinnati office. The dated August 6 acceptance of the installment agreement came from the Memphis office. Neither office was listed on the proof of claim.

[8] This breakdown in communication is again a large source of confusion as the termination notice was dated three days after the acceptance of the installation agreement originally requested in January 2020 but was received before the August 6 acceptance notice. The IRS nor the debtors can state whether the termination was referring to the near-simultaneous acceptance of the 2018 installation agreement, or the prior 2012 installation plan terminated in bankruptcy.

[9] The Debtor in her "Proposed Findings of Fact and Conclusions of Law" states that
> The insistence by the IRS that the 2012 installment agreement was still in effect despite the voiding of that agreement by the discharge in the Plaintiff's Chapter case, which rendered it unenforceable, had the effect of preventing the Plaintiff from entering into a reasonable installment agreement with the IRS until August of 2021, when the IRS accepted the Plaintiff's March 2020 offer of settlement.

3

$280,000, representing a sale for $15,000 less than listing price. The Plaintiff asserts that a fear of the IRS's possible levy resulted in the hastened sale and accordingly seeks to recover the difference. Plaintiff lastly seeks costs associated with filing the action and accrued interest and penalties relating to the 2018 tax liability.

An evidentiary hearing was conducted, after which the parties filed proposed findings of fact. The matter is now ripe for adjudication.

## II.     DISCUSSION

The Plaintiff seeks multiple forms of damages related to months of attempted collection of discharged debts and later miscommunication resulting in non-payment of post-petition tax liability despite good faith attempts to do so. The IRS admits that letters were sent relating to debts discharged in the bankruptcy but nevertheless contends that there was not a willful and intentional violation by the agency and its employees. Instead, it argues that the attempts were inadvertent and thus damages cannot be awarded under 26 U.S.C. § 7433(e). Although the Plaintiff was represented by her husband, she seeks to recoup legal fees in addition to costs and damages.[10] Regardless of the claim's viability, the IRS asserts that the Plaintiff is not entitled to legal fees and any recovery against it must be within the restricted confines of 26 U.S.C. § 7433(e).

### A.     The IRS violated the discharge order

A discharge in bankruptcy allows the debtor the fresh start envisioned by the Bankruptcy Code. A prohibition on attempted collection of discharged debts is integral to that fresh start and the peace of mind it brings to a debtor. *Bessette v. Avco Fin. Servs.*, 230 F.3d 439, 444 (1st Cir. 2000); *Bradley v. Fina (In re Fina)*, 550 Fed. Appx. 150, 156 (4th Cir. 2014). The Bankruptcy Code prescribes that a discharge order "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset" a debt which was previously discharged in bankruptcy. *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (citing 11 U.S.C. § 542(a)(2)). Notably, § 524 does not prescribe a specific remedy for a debtor which has been wronged by a violation of the discharge order. *Harlan v. Rosenberg &*

---

[10] The Debtor alludes to emotional damages in the complaint in stating that the collection activities "deprived her of the peace of mind that she expected to have as a result of the discharge of the Chapter 13 case" but does not fully develop a request for such relief. To the extent that the Debtor may seek to recover for purported emotional damages, there is no authority within the Fourth Circuit to support an award of damages for emotional distress as a result of civil contempt. *Burd v. Walters (In re Walters)*, 868 F.2d 665, 670 (4th Cir. 1989); *In re the Original Barefoot Floors of America, Inc.*, 412 B.R. 769 (Bankr. E.D. Va. 2008).

4

*Assocs. LLC (In re Harlan)*, 402 B.R. 703, 710 (Bankr. W.D. Va. 2009). Generally speaking, the bankruptcy court may issue any order, process, or judgment that is necessary to carry out the discharge order and protect the principles of the Bankruptcy Code. *Id*. at 1801; 11 U.S.C. § 105. However, the discretion afforded by § 105 is significantly curtailed in cases involving the IRS. *See Kovacs v. United States*, 614 F.3d 666, 672 (7th Cir. 2010) (Congress was "exceedingly clear" that 26 U.S.C. § 7433 applies "notwithstanding" 11 U.S.C. § 105) and *Kight v. IRS (In re Kight)*, 460 B.R. 555 ("Paragraph (e) of § 7433 is the only statute under which a debtor can petition a bankruptcy court to recover damages against the IRS for a willful violation of the discharge injunction.").

To succeed in an action for violation of the discharge order, a debtor must show by clear and convincing evidence that the defendant "had knowledge [actual or constructive] of the discharge and willfully violated it by continuing with the activity complained of." *Torres v. Chase Bank U.S.A., N.A. (In re Torres)*, 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007). While "willfully" is not defined, at minimum the word acts to differentiate between deliberate and unwitting conduct. *Bryan v. United States*, 524 U.S. 184, 191 (1998). The IRS here further contends that within the context of an IRS violation, 26 U.S.C. § 7433(e) requires proof that a specific IRS officer or employee willfully violated the discharge order, rather than the entity as a whole. This application does not appear accurate. *See IRS v*. Murphy, 892 F.3d 29, 39 (1st Cir. 2018) ("post-1998 decisions from this circuit and administrative materials from the IRS confirm that the generally accepted definition of willful violation should control.").

The IRS argues that none of its employees willfully violated the discharge order. It further contends that a creditor should not be held in contempt when the violation was inadvertent and due to clerical error, citing *In re Helmes (In re Helmes)*, 336 B.R. 105 (Bankr. E.D. Va. 2005). This is true, but only supports the Plaintiff's position. The court there stated that a violation occurs when the creditor knows of the pending petition and intentionally attempts to collect in spite of it. *Id.* at 109 (citing *Hamrick v. United States (In re Hamrick)*, 175 B.R. 890 (W.D.N.C. 1994)). Neither *Helmes* nor *Hamrick* involved ongoing and persistent collection attempts. *Helmes* involved a bank which failed to properly mark a debt as discharged when reporting to a credit agency. 336 B.R. at 107. When the bank learned of the mistake, it was remediated and no further collection attempts took place. *Id.* Similarly, *Hamrick* involved a clerical error made by a new employee which resulted in the mistaken belief that bankruptcy plan payments had not been made.

5

*Hamrick*, 175 B.R. at 891. When the debtors' attorney notified the office of the error, the demands were immediately withdrawn and a written apology was given. *Id.* Another court in the Fourth Circuit in *In re Shealy* found a violation of the automatic stay where all of the notices sent by a state tax department were "spawned by the mindless functioning of the Commission's computer system" which would have been prevented if the agency had taken proper precautions to update the system which spawned the notices. 90 B.R. at 179-80 (Bankr. W.D.N.C. 1988).

      The court finds these Fourth Circuit cases instructive as to the proper circumstances where a mistake is inadvertent and due to clerical error. The IRS's attempts to characterize the actions here as "inadvertent" in light of these cases is unpersuasive. While the IRS here failed for nearly twelve months to enter the discharge in its systems, the debtors on their own behalf called and mailed multiple notices to correct the issue. The IRS instead disregarded these warnings and continued direct attempts to collect the discharged debts. Like the state tax agency in *Shealy*, the IRS here "received multiple notices, yet took no action until it was threatened with sanctions" for the violation. *Id.* at 180. Despite receiving communications from Mr. McAuliffe as early as January 2020, the IRS and its employees did not abate the taxes until nearly a year after the discharge, in September 2020 after this complaint was filed.

      The IRS essentially attempts to hide behind the same thing for which it seeks to punish the debtors: the multitude of national offices involved in communications. According to the record, throughout the pendency of this case the Plaintiff received communications from or was given the address to at least five different IRS offices across the country.[11] Yet at the same time, the IRS seeks to blame any administrative mishaps and delays on the Plaintiff's communications to the Cincinnati office, rather than a Richmond "bankruptcy specialist." The court can see no reason to penalize Mr. McAuliffe for receiving a collection notice from the Cincinnati office and directing communications in response to that same office. It contravenes common sense to require a debtor who receives a notice from Cincinnati to direct a response to a Richmond office involved in the bankruptcy claim filed four years prior rather than responding directly to the office from which he

---

[11] The claim in the bankruptcy case requested notices to be sent to Philadelphia, PA, was filed by a "bankruptcy specialist" in Richmond, VA, and additionally included a Cleveland, OH address. Correspondence regarding the collection attempts on the discharged debts came from the agency's Cincinnati, OH and Memphis, TN offices. Further, the Cincinnati office is a purported "Taxpayer Assistance Center." This appears an appropriate location to direct communications involving a tax dispute.

received the communications.[12] While afforded remedies are limited by the implications of exclusivity in § 7433(e), that does not render the court oblivious to what the IRS attempts to do in its argument. As asserted by the Plaintiff, the IRS "seeks refuge in a combination of administrative difficulties and a lack of responsibility for computer generated notices which apparently are not to be taken seriously by taxpayers." To be frank, the IRS cannot have its cake and eat it too.

The IRS attempted to collect taxes which, without question, had been discharged on September 24, 2019. Three letters, which the IRS purports to have been automated, were sent to the Plaintiff between the discharge and the eventual abatement of those discharged taxes. The IRS contends that these letters were non-threatening and should not be seen as an attempt to collect.[13] This court disagrees. The letters state a monthly payment due immediately and threaten default if no payment is made. Further, none of the letters included a disclaimer that they are not an attempt to collect. This surely gives the appearance of an attempt to collect, whether sent to a layperson or a well-experienced bankruptcy attorney and his spouse. The court agrees with the Plaintiff that these letters serve no purpose other than to collect discharged personal liabilities.

To dispel any attempted argument by the IRS that the notice was sent automatically and thus unattached to any employee, the court is not persuaded. The IRS is a federal agency within the executive branch and serves an extremely important mission. If employees and automated systems in the Cincinnati office are disconnected from the interactions of other offices, the resulting shortcomings should not be attributed to the affected Plaintiff, but to the agency responsible. While COVID-19 is having a significant impact on all levels of the federal government, it does not excuse repeated attempts to collect on a Plaintiff doing everything possible to correct any miscommunications. At the time when the serious impacts of the COVID-19 pandemic reached the United States in March 2020, the Plaintiff was nearly six months post-discharge and the IRS still had not properly applied the discharge order to the couple's federal tax accounts. Further, the IRS had already mailed the first two automated notices.

Even in the event that the IRS as a whole was initially unaware of the bankruptcy related to these debts, Mr. McAuliffe communicated the discharge to the Cincinnati office as early as

---

[12] Further, seeing as the debtor went months without a response from the IRS in his communications directly with the source of the collection attempts, it is hard to believe that communications with a different office would have resolved the matter anymore expeditiously.

[13] In the record, the IRS states that the notices "were automated notices sent for a purely informative, rather than harassing purpose" and that they were "clearly automatically generated."

January 2020, and again in March 2020. Despite repeated attempts to remedy the situation, the couple received no relief until the IRS finally acknowledged and abated the debts nearly ten months later. While one automated notice could be "inadvertent," action should have been taken after Mr. McAuliffe contacted the IRS multiple times regarding the discharge – of which it should have already been aware.

Worth consideration is the fact that the IRS continued collection attempts for nearly a year following discharge. While these attempts also related to post-petition debt that the debtors did not contest, they included 2010 and 2011 debts which the IRS does not now contest were discharged in the bankruptcy. The debtors attempted for months to have the IRS correctly abate the discharged debts to no avail. After nearly nine months of attempts with no success, the discharged debts were coincidentally abated within three weeks of the reopening of the bankruptcy case to file this complaint. Ultimately, the fact that the agency was aware of the discharge and yet failed to take proper precautions to abate the discharged debts is enough to find that the agency committed a willful violation of the discharge in direct violation of 11 U.S.C. § 524 and 26 U.S.C. § 7433.

**B.     The Plaintiff is entitled to limited damages as a result of the violation.**

With the finding that the IRS violated the discharge order, the court is now tasked with the appropriate damages to award. This is a factual instance where the IRS committed actions which would bring significant sanctions were the defendant a private creditor, but statutory schemes enacted by Congress afford significant protection to the IRS by curtailing the court's discretion. The Plaintiff seeks to recover court costs and legal fees incurred in pursuing this action. Additionally, the Plaintiff seeks damages relating to the unlawful collection attempts as well as damages for accepting a lower sale price on the debtors' residence as a result of the IRS's notice of intent to levy. The IRS instead argues that the court cannot award any damages under applicable federal statutes.

As previously stated, 26 U.S.C. § 7433 is the exclusive means of recovery in this situation, and it acts as a significant limitation on the discretion that the court would otherwise have under 11 U.S.C. § 105. *See Kovacs*, 614 F.3d at 672-73. Nevertheless, "actual pecuniary damages sustained by the plaintiff" are still recoverable in addition to the costs of the action. 26 U.S.C. § 7433(b). Pecuniary damages are those "of, relating to, or consisting of money." Black's Law Dictionary (10th ed. 2014). Damages against a creditor cannot be based on mere speculation, guess, or conjecture. *Ridgeway Coal Co. v. FMC Corp*., 616 F. Supp. 404 (S.D.W. Va. 1985)

8

(citing *Sisler v. Hawkins*, 217 S.E.2d 60 (W. Va. 1975)). This principle is even more significant in suits against the federal government, where public dollars are involved. *Alden v. Maine*, 527 U.S. 706 (1999).

### 1. The Plaintiff is not entitled to legal fees.

The Plaintiff seeks recovery of legal fees as a result of pursuing this action against the IRS. While the analysis could be a complicated one due to the implications of a frequent bankruptcy practitioner representing himself and his wife as co-debtors, facts established at the evidentiary hearing make it quite simple.[14] The Plaintiff argues that Mr. McAuliffe is entitled to payment for his legal representation commensurate with that which any ordinary debtor would pay him. While there was no fee agreement or any money exchanged, Mr. McAuliffe argues that Tax Code principals aimed at curbing IRS wrongdoing warrant compensation for legal services. While it may be true that Mr. McAuliffe's representation of his wife may have resulted in lost business opportunities, this court does not believe these are recoverable because any speculative losses would be damage to him personally and he is no longer a plaintiff in this action. Additionally, the court finds that speculative losses are not legally compensable under binding Fourth Circuit precedent.

Recovery of legal fees in a proceeding against the United States relating to taxes is governed exclusively by 26 U.S.C. § 7430. Notably, even if the plaintiff does prevail in the action, no legal fees can be recovered if the United States' position is determined to have been "substantially justified." 26 U.S.C § 7430(c)(4)(B). Further, in order to recover legal fees in actions against the IRS, the taxpayer must prove that they "paid or incurred fees for the services of any attorney." *United States v. McPherson*, 840 F.2d 244, 245 (4th Cir. 1988). The Fourth Circuit in *McPherson* denied legal fees to an attorney who represented himself in claims against the IRS in which he prevailed. *Id*. at 244. Despite the IRS conceding its position was unreasonable, the court found the applicable statute which awarded litigation costs to taxpayers who prevail textually does not permit recovery of legal fees where there have been no fees actually paid or incurred. *Id*. at 244-246 (citing 26 U.S.C. § 7430).[15] Further, "neither the text nor the legislative history of the

---

[14] As previously noted, Mr. McAuliffe was a party to this action for nearly sixteen months but, presumably realizing the unfavorable caselaw for recovery of legal fees by a *pro se* litigant, dismissed himself as a party on the eve of the evidentiary hearing.

[15] For further application of this statute by a bankruptcy court, *see Richmond v. United States*, No. 90-06305-H7, 1996 Bankr. LEXIS 809, at *10-11 (Bankr. S.D. Cal. June 27, 1996).

9

statute justified compensation for 'lost opportunity cost.'" *Id.* at 245 (citing *Frisch v. Commissioner*, 87 T.C. 838 (1986).[16]

Contrarily, the Plaintiff cites this court's discretionary contempt power under the Bankruptcy Code "as a sanction to deter future lawlessness" as established in *Pague v. Harshman (In re Pague)*, No. 1-32061, 2010 Bankr. LEXIS 912 (Bankr. N.D.W. Va. Apr. 5, 2010). *Pague* involved a situation where the creditor knowingly violated the discharge order and this court awarded attorney's fees and discretionary damages as a result. Notably, all opinions cited in the case reference the court's sanctioning powers under 11 U.S.C. § 105, which as already discussed are not here applicable because the IRS is involved.[17] The court realizes the annoyance and outright inconvenience that the Plaintiff and her husband may have suffered as a result of the IRS's disregard for the discharge order (whether intentional or inadvertent), but any discretion which it

---

In tax matters involving the United States the exclusive vehicle for recouping attorney's fees is 26 U.S.C. § 7430. *Smith v. Brady*, 972 F.2d 1095 (9th Cir. 1992). A bankruptcy court may award attorney fees under [§ 7430]. *In re Germaine*, 152 B.R. 619, 623 (9th Cir. B.A.P. 1993). Courts that have addressed the issue have held that Section 7430 applies to actions for violations of the automatic stay of Bankruptcy Code section 362 and for violations of the permanent discharge of Bankruptcy Code section 524(a). *United States v. McPeck*, 910 F.2d 509, 511 (8th Cir. 1990).

[Section 7430] allows for an award of attorney fees in limited circumstances. *Germaine*, 152 B.R. at 625. One of the limitations is that the fees must be paid or incurred – a pro se litigant is not entitled to attorneys' fees under section 7430. *Corrigan v. United* [sic], 27 F.3d 436, 438 (9th Cir. 1994); *see also McCormack v. U.S.*, 891 F.2d 24, 25 (1st Cir. 1989) and *U.S. v. McPherson*, 840 F.2d 244, 245 (4th Cir. 1988).

[16] The *McPherson* court goes further, with the analogy of an accountant who in his own tax challenge "devotes his time to his own defense rather than profitably working for others." 840 F.2d at 245. While there are costs imposed on the accountant by the government's "misguided actions," the statute "cannot possibly be stretched to pay the accountant . . . for his lost time." *Id. See also United States DOJ v. Hudson*, 626 F.3d 36 (2nd Cir. 2010) ("While Mr. Hudson did expend time and effort to litigate (successfully) the issue of the IRS's interest assessment on the settlement amount, he paid no out-of-pocket expenses and incurred no obligation for the services of an attorney and therefore is not entitled to attorney's fees pursuant to IRC § 7430.").

This analysis is broader than is necessary to discuss here and should not be construed to limit recovery of other extraneous damages such as time missed from work for pursuing tax challenges. The simple fact that no out-of-pocket expenses were incurred in the representation is enough to thwart any attempted recovery of legal fees. As stated by the *McPherson* court, section 7430 "was drafted specifically to compensate only *actual out-of-pocket expenses or debts which would have to be paid*." (citing *Frisch*, 87 T.C. at 843-46) (emphasis added).

[17] *In re Baker*, 390 B.R. 524, 531 (Bankr. D. Del. 2008) ("courts use their inherent civil contempt power under section 105 to provide a remedy for violations of the discharge injunction."); *In re Workman*, 392 B.R. 189, 195 (Bankr. D.S.C. 2007) (11 U.S.C. § 105(a) provides a broader statutory grant of authority to sanction parties since it allows "any order."); *In re Latanowich*, 207 B.R. 326, 333 (Bankr. D. Mass. 1997) ("The Court's authority to enforce the discharge is set forth in 11 U.S.C. § 105(a).").

would otherwise be afforded by the Bankruptcy Code is severely limited by relevant Tax Code provisions herein referenced.

Put simply, *McPherson* is binding precedent in this circuit. While McAuliffe argues that the opinion applies only where an attorney seeks compensation for *pro se* representation, this conflation is misplaced. This court does not read the statute to apply solely to *pro se* representation, but applies it more broadly to the situation where the challenger seeks recovery of legal fees and no out of pocket legal expenses are incurred. Assuming for purposes of this analysis that the IRS's position was not substantially justified, the Plaintiff nevertheless did not pay any out-of-pocket costs which would allow recovery of legal fees under 26 U.S.C. § 7430 and the precedent established in this circuit by *McPherson*. The Plaintiff and her husband surely expended time and effort in the multi-year attempt to resolve this matter with the IRS, but effort alone does not entitle one to attorney's fees under federal law. As was established at the evidentiary hearing, no money was ever exchanged and no fee agreement was entered into between the spouses. This evidence leads to the conclusion that no attorney's fees were actually "paid or incurred" as is required under *McPherson* and 26 U.S.C. § 7430. As such, no analysis as to whether the IRS's position was substantially justified is necessary. The Plaintiff cannot recover legal fees for this action when no out-of-pocket costs were incurred.

**2. The Plaintiff is not entitled to damages for the sale of the home**

Additionally, the Plaintiff seeks to recover the difference between the intended home listing price of $295,000 and the $280,000 she and Mr. McAuliffe accepted. She claims the IRS intent to levy notice piqued the couple, forcing them to accept the first offer they received despite the prospective $15,000 reduction in value.[18] Of importance to this analysis is the fact that this sale was nearly a full year after the 2010 and 2011 debts had been abated by the IRS. The debts relating to those taxes were finally abated on September 28, 2020. While the Plaintiff's argument that these debts inhibited entering into an installment payment relating to the 2018 debts is justified up to the date of abatement, any damages beyond that point which are not concretely proven would be unduly speculative and non-recoverable.

---

[18] The IRS argues that if damages are awarded, they must be limited to the amount of the prospective levy. Had the levy been executed, it would have been for the total amount of $5,043.93 and this amount, according to the IRS, is the maximum that could be awarded. Addressing this argument is not necessary for the purposes of this analysis.

11

To be clear, all contact after the September 2020 abatement related exclusively to the uncontested 2018 liability. The purported notice of intent to levy never mentions the abated debts. While the court disagrees with the IRS's contention that the Plaintiff's fears of levy were "objectively unfounded" in light of the couple's continued mistreatment by the IRS, any purported fears are too speculative and removed in time to be conclusively related to the 2010 and 2011 tax liabilities. Thus, while the abated debts may have caused a substantial delay in entering into an installment agreement for the 2018 liabilities, the home sale a full year after the abatement is too distant in time and nature to attribute any possible damages to the discharge violation. Accordingly, this court cannot award any damages relating to the Plaintiff's sale of her residence at a price lower than expected.

### 3. The Plaintiff is entitled to a refund of the filing fees associated with this complaint

The Plaintiff originally sought reimbursement of the two fees associated with reopening this case and filing the adversary proceeding. One such fee in the amount of $350 for the cost of filing this adversary proceeding has already been refunded because it is not required to be paid where the debtor is the plaintiff in the proceeding pursuant to *Bankruptcy Court Miscellaneous Fee Schedule* Item 6 ("*Fee Schedule*").[19] However, Plaintiff still seeks recovery of the $235 fee for reopening the Chapter 13 bankruptcy case.

The IRS argues that this fee cannot be awarded against the IRS because 26 § U.S.C. 7433(d)(2) requires damages awarded to be reduced by the amount which the plaintiff failed to reasonably mitigate damages. *Fee Schedule* Item 11 in fact states that the $235 fee for filing a motion to reopen a Chapter 13 case must not be charged "when a debtor files a motion to reopen a case based upon an alleged violation of the terms of the discharge under 11 U.S.C. § 524." The IRS correctly asserts that payment of this fee was in error and accordingly should not be included in damages. The Plaintiff is nevertheless entitled to the return of this payment under the *Fee Schedule*. Accordingly, the court will refund this fee to the Plaintiff because it was not required to be paid.

---

[19] The *Bankruptcy Court Miscellaneous Fee Schedule* is available online at https://www.uscourts.gov/services-forms/fees/bankruptcy-court-miscellaneous-fee-schedule.

### 4. The Plaintiff is entitled to recovery of interest and failure to pay penalties resulting from the violation

Finally, the Plaintiff seeks to reduce penalties and interest directly related to the unlawful collection attempts. From at least January 29, 2020, Mr. McAuliffe attempted to enter into an installment agreement regarding the 2018 taxes on the couple's behalf. Despite these attempts, the IRS was uncooperative with the couple and unwilling to enter into any such agreement until approximately nineteen months after the original request was made. For eight months beyond the initial request (and more than a year past the discharge order) this uncooperativeness was attributable, in part or in whole, to the mistaken belief that the debtors still owed debts from 2010 and 2011. The IRS places great weight on the fact that the Plaintiff has received no communications pertaining to the 2010 and 2011 debts since the filing of this adversary proceeding. While this may be pertinent in relation to alleged damages occurring after reopening the bankruptcy case, it does not negate any violations which occurred prior to abatement.

The IRS argues that the plaintiff is not entitled to reduce interest and penalties directly related to the 2018 liability because it is a post-petition debt and thus outside the Bankruptcy Court's jurisdiction. 28 U.S.C. § 1334; 26 U.S.C. § 7421. The Anti-Injunction Act ("AIA") states that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a). The objective of this statute is to protect the IRS from tax litigation outside of the prescribed statutory scheme. *Commissioner v. Shapiro*, 424 U.S. 614 (1976). Courts are split as to the degree in which the Bankruptcy Code abrogates the AIA in instances of an IRS automatic stay or discharge order violation,[20] but it is nevertheless irrelevant here.

The court here does not wish to restrain assessment or collection of an uncontested tax liability. Instead, it wishes to award the Plaintiff damages for the actual economic damages incurred from a willful violation of the discharge order. While presumably no interest or penalties were incurred on the 2010 and 2011 debts once they were abated, it took the IRS nearly two years to enter into an installment agreement regarding the valid post-petition 2018 debt. In that time, the

---

[20] *Compare American Bicycle Ass'n v. United States (In re American Bicycle Ass'n)*, 895 F.2d 1277 (9th Cir. 1990), *LaSalle Rolling Mills, Inc. v. United States (In re La Salle Rolling Mills)*, 832 F.2d 390 (7th Cir. 1987), and *A to Z Welding & Mfg. Co. v. United States*, 803 F.2d 932 (8th Cir. 1986), *with O'Shea v. Littleton*, 414 U.S. 488 (1974) (Douglas, J. dissenting), *U.S. Home Corp. v. Los Prados Cmty. Ass'n (In re U.S.H. Corp. of N.Y.)*, 280 B.R. 330 (Bankr. S.D.N.Y. 2002), and *Davis. v. Sheldon (In re Davis)*, 691 F.2d 176 (3d Cir. 1982).

Plaintiff's husband actively attempted to enter into an agreement multiple times to no avail. While the couple waited for months to hear back from the IRS, the debt was accruing interest at variable monthly rates in addition to failure-to-pay penalties. Despite seeking an installment agreement and receiving no response from the IRS for months, they received monthly statements informing them of interest and penalties for the non-payment of the debt. The inability to reach an agreement with the IRS is directly attributable to the 2010 and 2011 debts which the IRS mistakenly held to be outstanding until September 28, 2020, despite their discharge more than a year prior.

With this in mind, any interest and missed payment penalties accrued from the initial March 2020 notice letter until the IRS' eventual acceptance of the couple's settlement offer are actual pecuniary damages that resulted from the IRS's violation of the discharge order. The March 4, 2020 notice lists total interest and failure-to-pay penalties regarding the 2018 debt of $329.83. By the time that the IRS accepted the installment agreement, this total had ballooned to $828.04, a total increase of $498.21.[21] This increase would have been circumvented had the IRS made meaningful attempts to work with a cooperative taxpayer and update its systems to accurately reflect the Plaintiff's bankruptcy discharge. Instead, the interest and penalties were incurred at no fault of their own, and accordingly the court will award the Plaintiff $498.21 in damages.

### III.   CONCLUSION

For the foregoing reasons, the court finds it appropriate to hold that the IRS violated the discharge in attempting to collect tax liabilities which were discharged in the bankruptcy. Consistent with Fed. R. Civ. P. 58, made applicable by Fed. B. Bank. P. 7058, the court will enter a separate order finding that the IRS violated the discharge order, awarding partial damages of $498.21, and refunding the filing fee of $235 for reopening the bankruptcy to pursue this adversary proceeding. All other requested damages are denied.

---

[21] The $828.04 amount is listed in the December 2021 payment notice, but this amount presumably did not increase from the time of acceptance of the installment agreement, as all $300 monthly installment payments were made in August, September, October, and November.